### GULF, C. & S. F. RY. CO. v. JOHNSON.

(Circuit Court of Appeals, Eighth Circuit. January 27, 1893.)

No. 150.

1. RAILROAD COMPANIES—NEGLIGENCE—FIRES—EVIDENCE.
   In an action against a railway company for the loss of hay and grass by reason of the negligent escape of fire from its locomotives, evidence is admissible that both before and after the injury complained of defendant's engines had set fire to grass and other combustible matter in the immediate vicinity of plaintiff's premises, and similarly situated.

2. SAME—SUFFICIENCY OF EVIDENCE.

Several of defendant's trains passed plaintiff's premises on the day of the fire, and defendant's testimony showed that some of its engines were in good and some in bad order. It also attempted to show that if any of them caused the fire it could have been only a particular one, which was provided with the most approved spark arrester, and was otherwise in good order and condition. *Held,* that the jury was justified in finding that the fire was caused by an engine other than the one specified.

3. SAME—CONTRIBUTORY NEGLIGENCE.

An occupant of land adjoining a railway is not bound to protect a hay-stack 250 yards from the line of road from sparks from passing engines, either by making fire guards or by plowing around it. Nor is it contributory negligence to leave the land between the stack and the railroad track in its natural condition.

4. SAME—INDIAN TITLE—INDIAN TERRITORY.

One occupying land under an eight-years contract with a citizen of the Chickasaw Nation may recover for loss of crops, occasioned by the negligent escape of sparks from a railway engine, although a law of the Nation may prohibit its citizens to grant lands for a longer term than one year; for occupancy and possession of land are sufficient to enable one suffering loss of crops by reason of the escape of sparks from passing engines to maintain an action therefor.

5. SAME—KILLING STOCK—DUTY OF ENGINEER.

Under the Arkansas laws in force in the Indian Territory it is the duty of a railway engineer to keep a lookout for stock upon the track, and to use reasonable care to avoid injuring or killing the same when discovered. Railway Co. v. Washington, 1 C. C. A. 286, 4 U. S. App. 121, 49 Fed. Rep. 347, followed.

6. APPEAL—REVIEW—GENERAL EXCEPTIONS TO INSTRUCTIONS.

Where a charge, or any part thereof, contains distinct propositions of law, a general exception to it will be overruled if any one of such propositions is unobjectionable.

7. SAME—DECISION—REMITTITUR.

For a trifling error in computing interest the court will not reverse, but will direct a remittitur.

In Error to the United States Court in the Indian Territory.

This action was commenced in the United States court in the Indian Territory, third division, by W. H. Johnson, the defendant in error, against the Gulf, Colorado & Santa Fe Railway Company, plaintiff in error, to recover the value of a yearling alleged to have been killed by the negligent operation of the defendant's trains, and also to recover the value of two tons of hay and the grass growing on eighty acres of pasture land alleged to have been burned by fire negligently permitted to escape from the defendant's locomotives. The answer was a general denial. There was a trial and verdict, and judgment for the plaintiff, and the defendant sued out this writ of error. Affirmed.

E. D. Kenna, Adiel Sherwood, J. W. Terry, and C. L. Jackson, for plaintiff in error.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

CALDWELL, Circuit Judge. 1. The first seven assignments of error are based on the ruling of the court below allowing the plaintiff to prove that the defendant's engines had set fire to the grass and other combustible matter on the line of its road in the immediate vicinity of the plaintiff's premises, and similarly situated, short-

ly before and soon after the fire which burned the plaintiff's property. This was competent evidence to go to the jury as a circumstance "tending to prove the possibility, and a consequent probability, that some locomotive caused the fire, and as tending to show a negligent habit of the officers and agents of the railroad company." Railway Co. v. Richardson, 91 U. S. 454; Railway Co. v. Gilbert, 4 U. S. App. ——, 52 Fed. Rep. 711. And see generally as to the great latitude allowed in the reception of circumstantial evidence, Holmes v. Goldsmith, (Oct. Term, 1892,) 13 Sup. Ct. Rep. 288.

Several of defendant's trains passed the plaintiff's premises on the day of the fire. The defendant attempted to show that, if the fire was set out by any of its engines, it was engine No. 53, and that that particular engine was provided with the most improved spark arrester, and was otherwise in good order and condition, and that it was operated skillfully while passing plaintiff's premises. But the plaintiff did not allege or admit that that was the engine which set out the fire. Whether it was or not was a question for the jury. The defendant's own testimony showed that some of its engines were in good and some in bad order. The jury may have found, notwithstanding the claim of the defendant at the trial, and the testimony offered in support of its contention, that engine No. 53 was not the one which set out the fire. They may have discredited defendant's testimony on that point. The case falls clearly within the rule laid down in the cases cited.

2. Three of the assignments of error relate to that part of the charge of the court in which it told the jury that it was the duty of the defendant's engineer to keep a lookout for stock upon the track, and to use reasonable care to avoid injuring or killing the same when it was discovered. The act of congress adopted for the government of the Indian Territory the body of the statute law of Arkansas. Congress doubtless put the Arkansas laws in force in that territory from a conviction that they were better adapted to the situation, habits, and customs of the people of that territory than the laws of any other state. Carrying out the policy indicated by the act of congress, this court has, in the determination of questions arising in that territory which depend for their solution upon the common law, adopted the exposition of that law, in like cases, by the supreme court of Arkansas. The supreme court of that state, in a well-considered case, (Railway Co. v. Finley, 37 Ark. 562, 570,) held: "It was certainly the duty of the engineer to keep a constant and careful lookout and watch for stock which might be upon the track." The doctrine of this case has been affirmed in later cases. Railway Co. v. Holland, 40 Ark., 336; Railway Co. v. Monday, 49 Ark., 257, 264, 265, 4 S. W. Rep. 782. It is true that the decisions of the supreme court of that state are not quite harmonious on this question, but we think the cases we have cited lay down the sound rule, which we have applied in several cases coming from that territory. Railway Co. v. Washington, 4 U. S. App. 121, 1 C. C. A. 286, 49 Fed. Rep. 347; Railway Co. v. Childs, 4 U. S. App. 200, 1 C. C. A. 297, 49 Fed. Rep. 358; Railway Co. v. Elledge, 4 U. S. App. 136, 1 C. C. A. 295, 49 Fed. Rep. 356. The question can no longer be regarded as an open one in this court in cases coming from that territory.

In the brief of the learned counse' for the plaintiff in error it is said: "It is the universal rule that : n enzi'eer need not look out for human beings. Why should the defendant be required to exercise a higher degree of care in the case of a horse than in the case of a man?" This interrogatory is answered in a very satisfactory manner by Judge Smith in delivering the opinion of the court in Railway Co. v. Monday, supra. He said:

"Now, as railroads are not required to be fenced, it inevitably happens that these dumb creatures frequently stray upon a railroad track. And the owner of them is not guilty of contributory negligence in suffering them to go at large, for such is the universal custom, and was before any railroads were built; hence their occasional presence upon the track is to be reasonably anticipated, and hence the law imposes upon the persons in charge of a train the duty of keeping a vigilant outlook for them. But no such duty arises in the case of human beings, who are possessed of reason and intelligence. They are presumed to know that a railroad track is a dangerous place to walk on, and, as they are capable of taking care of themselves, they take the risk of the consequences upon themselves, if they do walk upon it."

3. The plaintiff's hay was stacked in the meadow, from which it had been mowed that year, 250 yards from defendant's line of road. The meadow between the stack and the railroad had been mowed, and the hay cut therefrom stacked. In all other respects the plaintiff's land between the railroad track and the stack was in its natural condition. Mowing the grass and stacking it the distance mentioned from the railroad track lessened the danger from fire. Upon these facts the defendant asked the court to instruct the jury "that, if you find from the evidence in this case that the plaintiff did not use any effort to protect his hay which he alleged was burned by sparks cast out by defendant's engine, either by plowing around the ricks of hay in question, or by making fire guards around the same, or using other means such as a careful, prudent person would have done, and that because of such failure to so protect said hay the same was burned, then you will find for the defendant as to such hay." The court declined to give this instruction, but did instruct the jury that if they found "from all the evidence in this case that the fire which plaintiff claims that defendant set and which injured him would not have occurred if plaintiff had used care in the protection of his property which a man of ordinary prudence under like circumstances would have used, then the plaintiff cannot recover." The defendant's request ought not to have been given, for several reasons. It assumes it to be an established fact that a careful, prudent person would have plowed around the haystack, or made fire guards, or used other special means to protect the stack from fire. There was no evidence whatever to justify that assumption. It is very well settled that it is not contributory negligence for the occupant of land adjoining a railroad to leave it in its natural state; and a farmer using his premises in the ordinary and customary manner is not guilty of contributory negligence for failing to resort to special or extraordinary precautions to prevent the destruction of his property from fire happening through the negligence of a railroad company. Shear. & R. Neg. §§ 680, 681, and cases cited; Ray, Neg. Imp. Dut. § 90, and cases cited. There was no evidence of any

usage or custom in that county no plow around haystacks or resort to any other spot or to prevent fire reaching them, when situated as the plaintiff's stack was. There was, therefore, no evidence to justify the court in submitting to the jury the question of contributory negligence at all. But if the evidence had justified an instruction on the object, the one given by the court was sufficient.

4. The defendant asked the court to instruct the jury that the plaintiff could not recover if the hay "was cut upon the land of the Chickasaw Nation, and not upon the land owned by the plaintiff." The court refused to give this instruction, and charged the jury that, so far as related to the title to the land upon which the grass burned was growing and from which the hay was cut, it was sufficient for the plaintiff to show that he was in the actual and exclusive possession of the land and hay, and entitled to the exclusive use and enjoyment of the same. The defendant excepted to this part of the court's charge. It requires no argument or citation of authorities to show that the instruction asked by the defendant was rightly refused. It asserted roundly, and without qualification, that the plaintiff could not recover if the hay "was cut upon land of the Chickasaw Nation," and that he could not recover unless it was cut upon "land owned by the plaintiff."

It is claimed on behalf of the plaintiff in error that the fee of the lands in the Chickasaw country is vested in the Chickasaw Nation of Indians; that the citizens of the Nation, by some law, custom, or usage, have a right to the usufruct of so much of the lands of the Nation as they may improve and occupy, but that under a law of the Nation the citizen cannot make a valid lease of the land of which he has taken possession for a longer term than one year; and that the plaintiff was in possession of the land in question under a lease from Kriner, a native citizen of the Nation, which run for eight years, and was void for that reason, and that "the hay was, therefore, the property of Kriner." Assuming, but not deciding, that the laws and customs of the Chickasaw Nation are what the plaintiff in error claims them to be, and that the lease under which the plaintiff acquired the possession of the land was void, his right of recovery is not affected thereby. The plaintiff was in the actual peaceable possession of the land and the hay cut from it. As against a wrongdoer, possession is title. The presumption of the law is that the person who has the possession has the property, and the law will not permit that presumption to be rebutted by evidence that the property was in a third person, when offered as a defense by one who claims no title, and was a wrongdoer. One who goes through the country negligently or willfully setting fire to people's pastures, haystacks, and houses, will not, when called upon to pay for his wrongful act, be heard to say that the legal title to the property destroyed was in the third person, and not in the person who had the actual possession. "Occupancy," says Chancellor Kent, "doubtless gave the first title to property in lands and movables. It is the natural and original method of acquiring it, and upon the principles of universal law that the title continues so long as occupancy continues." 2 Kent,

Comm. 400. It was found impossible for all persons to be constantly in possession of their property, and society devised other evidences of title. In most controversies between rival claimants to property, these artificial or legal evidences of title are paramount and the best evidence, and must be produced; but, as against a wrongdoer claiming no right or title to the property, possession is as potent as it was before any other evidence of title to property was devised or recognized. One cannot burn down another's house over his head, and, when called upon to pay for his wrongful act, reply that the logs out of which the house was built were cut upon the public lands of the United States, and therefore not the plaintiff's property; or put the plaintiff to the proof of his title to the land upon which the house stood, in the manner that would be necessary in an action of ejectment to recover the land from one in possession.

The number of cases coming from this territory in which this defense is sought to be set up by the wrongdoer against the plaintiff in possession will justify a reference to some of the authorities. In Com. Dig. tit. "Trespass," (B2,) it is said: "So an intruder on the king's possession may maintain trespass." In Wilbraham v. Snow, 2 Saund. 47, c. note f: "So possession with an assertion of title, or even possession alone, gives the possessor such a property as will enable him to maintain this action [trover] against a wrongdoer; for possession is prima facie evidence of property." In Addison on Torts, 358, it is laid down that, "as against a wrongdoer, possession is title, and the presumption of law is that the possession and ownership of chattels go together, and that presumption cannot be rebutted by evidence that the right of property was in a third person, offered as a defense by one who admits that he had no title and was a wrongdoer when he took or converted the goods. A wrongdoer, therefore, in actual possession of goods, the property of another, can recover their value in an action against another wrongdoer who takes the goods from him." And possession of land without even a claim of title vests a sufficient right of property in the person who has such possession to enable him to hold the land against all the world except the true owner. Tied. Real Prop. § 692. It is prima facie evidence of a seisin in fee, which is the highest estate in land; and a prior possession is sufficient to entitle a party to recover in an action of ejectment against a mere intruder or wrongdoer. Tyler, Ej. 70, 72. And if the railroad company, instead of burning this property, had taken forcible possession of it, the plaintiff could have recovered the property without showing other right or title than his prior actual and peaceable possession. A leading case on this subject is Graham v. Peat, 1 East, 244. The case was trespass quare clausum fregit. Plea, the general issue. At the trial it appeared that the plaintiff was in possession of the land under a void lease, and thereupon he was nonsuited. A rule was thereupon obtained "to show why the nonsuit should not be set aside, upon the ground that the action was maintainable against a wrongdoer upon the plaintiff's possession alone, without showing any title." The report of the case proceeds as follows:

"Cockell, Serjt., Park and Wood now showed cause, and insisted that pos-session was no further sufficient to ground the action even against strangers than as it was prima facie evidence of title, and sufficient to warrant a verdict for the plaintiff, if nothing appeared to the contrary. But here it did expressly appear by the plaintiff's own case that his possession was wrong-ful, for it was a possession in fact against the positive provisions of an act of parliament, without any color of title even against strangers."

Counsel on the other side were stopped by the court, and Lord Kenyon, C. J., said:

"There is no doubt but that the plaintiff's possession in this case was suffi-cient to maintain trespass against a wrongdoer; and, if he could not have main-tained an ejectment upon such a demise, it is because that is a fictitious remedy founded upon title. Any possession is a legal possession against a wrongdoer. Suppose a burglary committed in the dwelling house of such an one, must it not be laid to his dwelling house notwithstanding the defect of his title under the statute?"

In Cary v. Holt, Strange, 1238, 11 East, 70, note, the plaintiff de-clared in trespass upon his possession. The court said upon the state of the pleadings the defendant's title was out of the case, "and then it stands upon the plaintiff's possession, which is enough against a wrongdoer, and the plaintiff need not reply a title." And to the same effect are Catteris v. Cowper, 4 Taunt. 547; Pol. Torts, 315; Jeffries v. Railroad Co., 5 El. & Bl. 802. Judge Cooley (Cooley, Torts, 444) adopts the language of Lord Campbell in the case last cited, that—

"The law is that a person possessed of goods as his property has a good title as against every stranger, and that one who takes them from him, having no title in himself, is a wrongdoer, and cannot defend himself by showing that there was a title in some third person, for against a wrongdoer possession is title. The law is so stated by the very learned annotator in note to Wil-braham v. Snow, and I think it most reasonable law, and essential for the interests of society, that peaceable possession should not be disturbed by wrongdoers. * * * It is not disputed that the jus tertii cannot be set up as a defense to an action of trespass for disturbing the possession. In this respect I see no difference between trespass and trover, for in truth the pre-sumption of law is that the person who has the possession has the property. Can that presumption be rebutted by evidence that the property was in a third person, when offered as a defense by one who admits that he himself had no title and was a wrongdoer when he converted the goods? I am of the opinion that this cannot be done."

The court properly instructed the jury that the plaintiff's pos-session of the property was sufficient evidence of his title as against the defendant.

It will, of course, be understood that we are dealing with the question only in the light of the want of title other than possession, being pleaded as a bar to the action, and not with its effect upon the measure of damages, as to which see Railroad Co. v. Lewis, 2 C. C. A. 446, 7 U. S. App. 254, 51 Fed. Rep. 658.

5. It is assigned for error that the court told the jury that, if they found any sum in favor of the plaintiff, they would allow 6 per cent. interest thereon from the date of the destruction of the property. This direction was the last clause in a very long paragraph of the charge containing a summary of the whole case, and stating the rules of law applicable to the facts. This paragraph of the charge was ex-

cepted to as a whole. It stated the law accurately in two or three aspects of the proof. The rule is well settled that where the charge, or any part of it, which contains two or more distinct propositions of law, is excepted to generally, the exception wil be overruled if any one of the propositions of law it contains is unobjectionable. Price v. Pankhurst, 53 Fed. Rep. 312.

If the plaintiff in error desired to except to that part of the charge relating to interest, he should have leveled his exception distinctly at that clause of the charge. Railway Co. v. Jurey, 111 U. S. 584, 4 Sup. Ct. Rep. 566. If the attention of the court had been specifically called to the clause of the charge on this subject, it is highly probable its language would have been changed from mandatory to permissive, from "will allow" to "may allow," which would have removed the error complained of. Eddy v. Lafayette, 4 U. S. App. 247, 1 C. C. A. 441, 49 Fed. Rep. 807; Wilson v. City of Troy, (N. Y. Ct. App.; Oct. 4, 1892,) 32 N. E. Rep. 44. This disposes of the exception, and makes it unnecessary to inquire whether the charge in relation to interest was erroneous, and, if so, whether the maxim that the law does not concern itself about trifles would not apply; the verdict being for such a small sum, and the interest, if any was allowed by the jury, so extremely trifling in amount. Broom, Leg. Max. [135;] Elliott, App. Proc. § 636. At most the court would direct a remittitur, and not reverse the case for a trifling error in computing interest. Id. § 570. The judgment of the court below is affirmed.