GULF, COLORADO & SANTA FE RAILWAY CO vs CLARK.

Opinion delivered June 7, 1899.

1. *Trespass—Who May Maintain Action.*

One who enters land at a public land office and obtains a certificate of entry has such an estate therein that he may maintain an action of trespass.

2. *Public Lands—Right of Holder of Certificate of Entry.*

After public lands have been entered at the land office, and certificate of entry obtained, they are private property, and one bringing an action of trespass for the destruction of the land by changing of a water course, is entitled to recover the actual value of the land.

*3.   Water Courses—Changing Current—Liability for Damages.*

> One who by building of dykes or by other obstruction, changes
>   the channel of a stream, so as to deflect the current and injure
>   the land or property of another, is liable to such other person
>   for the damage caused.

Appeal from the United States Court for the Northern
district.

Wm. M. Springer, Judge.

Action by H. H. Clark against the Gulf, Colorado &
Santa Fe Railway Company for the value of about 90 acres
of land alleged to have been washed away and destroyed by
the South Canadian river, such damage being caused by the
building by defendant of certain dykes in the channel of the
river, which changed the direction of the current of the river
and caused it to flow against the land of the plaintiff thus
causing it to be eroded and washed away.    Judgment for
plaintiff.    Defendant appeals.    Affirmed.

*J. R. Cottingham* and *Ledbetter & Bledsoe,* for appel-
lants.

*Eddleman & Kendrick* and *Close & Sharp,* for appellee.

Thomas, J.    The first question presented by appel-
lant in its brief is as to whether or not the title of the appel-
lee was such that he could maintain this action.    In the year
1893 he had entered upon and taken possession of this land
by virtue of the homestead laws of the United States, and
had obtained a duplicate receipt from the receiver of the
land office at Oklahoma City.    He had entered upon this
land, cultivated it, improved it, and was in possession of it
at the time the injury complained of occurred.    Appellant
in its brief disputes the right of the appellee to maintain

this action upon this receiver's certificate, and asks the question, on page 9, "If defendant had taken possession of this ninety acres of land and had fenced the same, and the plaintiff had sued for possession, would it have been incumbent upon him to prove title?" How can that be distinguished from a case where, instead of taking possession, the defendant is charged with having carried the land away, by means of the Canadian and connecting streams, into the Gulf of Mexico? Section 2628, Mansf. Dig. provides that "an action of ejectment may be maintained in all cases where the plaintiff claims the possession of the premises under or by virtue of: First. An entry made with the register and receiver of the proper land office of the United States. Second. A pre-emption right under the laws of the United States. Third. Where an improvement has been made by him on any of the public lands of the United States, whether the lands have been surveyed or not. And where any person other than those to whom the right of action is given by the preceding clauses of this section is in possession of such improvement." In the case of Wilson vs Owens, 1 Ind. Ter. 163, decided by this court, it was held that the chapter on ejectment of Mansfield's Digest was in force in the Indian Territory by act of congress of March 1, 1889, although not specifically enumerated in that act. The supreme court of Arkansas, in at least three cases which have been called to our attention, has held that the action of ejectment could be maintained upon a certificate of a homestead entry such as that offered in evidence by the appellee in this case. In the case of Gaither vs Lawson, 31 Ark. 279, Chief Justice English said upon this point, which was involved in the case: "A receipt of the receiver of the United States land office for the fees and commissions paid by an appellant for a homestead, under the provisions of the homestead act of congress, will entitle the holder to maintain the action of ejectment." See, also, cases of Brummett vs
(21)

Pearle, 36 Ark. 471, and Hill vs. Plunkett, 41 Ark. 466. In all three of these cases the right to recover was based upon the receiver's certificate, as in the case at bar. In the case of Railroad Co. vs Johnson, 4 C. C. A. 452, 54 Fed. 479, Judge Caldwell, of the circuit court of appeals, in delivering the opinion of the court, said: "The number of cases coming from this territory in which the defense is sought to set up by the wrongdoer against the plaintiff in possession will justify a reference to some of the authorities. In Com. Dig. tit. 'Trespass' (B2), it is said: 'So, an intruder on the king's possession may maintain trespass.' In Wilbraham vs Snow, 2 Saund, 47e, note f: 'So, possession with an assertion of title, or even possession alone, gives the possessor such a property as will enable him to maintain this action [trover] against the wrongdoer; for possession is prima facie evidence of property.'

In Add. Torts, 358, it is laid down that, 'as against the wrongdoer, possession is title, and the presumption of law is that the possession and ownership of chattels go together' and that presumption cannot be rebutted by evidence that the right of property was in a third person, offered as a defense by one who admits that he had no title, and was a wrongdoer, when he took or converted the goods. A wrongdoer, therefore, in actual possession of goods, the property of another, can recover their value in an action against another wrongdoer, who takes the goods from him.' . And possession of land, without even a claim of title, vests a sufficient right of property in the person who has such possession to enable him to hold the land against all the world except the true owner. Tied. Real Prop. § 692. It is prima facie evidence of seisin in fee, which is the highest estate in land, and a prior possession is sufficient to entitle the party [torecover in an action of ejectment against a mere intruder or wrongdoer. Tyler Ej. 70, 72. And if the railroad company, instead of burning this property, had taken

forcible possession of it, the plaintiff could have recovered the property without showing other right or title than his prior actual and peaceable possession.   A leading case on this subject is Graham vs Peat, 1 East, 244.   In that case Lord Kenyon, C. J., said· ''There is no doubt but that the plaintiff's possession in this case was sufficient to maintain trespass against the wrongdoer, and, if he could not have maintained an ejectment upon such a demise, it is because that is a fictitious remedy, founded upon title.   Any pos· session is a legal possession against the wrongdoer."   It would therefore seem that both under the statute of Arkansas and the decisions of the supreme court of Arkansas prior to the adoption of that statute, and which are binding upon this court, as well as under the above decision of Judge Caldwell in the case of Railroad Co. vs Johnson, the appellee had a sufficient title to maintain an action of ejectment against the appellant and therefore could maintain this action of trespass against it for taking and carrying away land to which he was entitled.

The appellant also contends that, even though the appellee did have such a title that he could have maintained this action, yet the measure of damage as given by the presiding judge in his charge to the jury was incorrect.   In the above case of Railroad Co. vs Johnson, Judge Caldwell further said, as relating to the measure of damage:   ''The court properly instructed the jury that the plaintiff's possession of the property was sufficient evidence of his title as against the defendant."   The appellee in this case was not only in actual possession of this land, but had greatly improved it, and had taken steps to acquire a perfect title to it, when he charges that the appellant, by its wrongful action, deprived him of it.   In the case of Wisconsin Cent. R. Co. vs Price Co., 133 U. S. 496, 10 Sup. Ct. 344, Mr. Justice Field, in delivering the opinion of the court, in substance stated.   After public lands have been entered at the land of-

fice, and certificate of entry obtained, they are private prop-
erty; the government agreeing to make a conveyance as
soon as it can, and in the meantime holding the naked legal
fee in trust for the purchaser, who has the equitable title.
In that case he cited Carroll vs Safford, 3 How. 441, in
which it was held that after the land was entered, and re-
ceipt of certificate given, the land so entered ceased to be
public domain, and so taxable. Said the court: "When
the land was purchased and paid for, it was no longer prop-
erty of the United States, but of the purchaser." And
again: "It is said the fee is not in the purchaser, but in the
United States, until the patent shall be issued This is so,
technically, at law, but not in equity. The land in the hands
of the purchaser of real estate descends to his heirs, and does
not go to his executors and administrators." See, also, the
case of Witherspoon vs Duncan, 4 Wall, 210, in which the
court said: "In no just sense can the lands be said to be
public lands after they have been entered at the land office
and certificate of entry obtained. If public lands before the
entry, after it they are private property. The contract of
purchase is complete when the certificate is executed and
delivered, and thereafter the land ceases to be a part of the
public domain." See, also, Railroad Co. vs Prescott, 16
Wall, 603; Railroad Co. vs McShane, 22 Wall, 444. In the
light of the foregoing, we are of the opinion that the con-
tention of the appellant that the appellee did not have such
a title to the land as to enable him to maintain an action of
trespass or of ejectment is not well taken, and that the
measure of damage, as given by the court to the jury, is
correct. The case of Railroad Co. vs Ragsdale (Tex. Sup.)
2 S. W. 515, is not, in our opinion, applicable to this case.
In that the plaintiff had conveyed the land by absolute
deed, and after conveying it remained in possession from the
1st day of May until the 1st day of November under a verbal
agreement, and during that interval between May and No-

vember the grass and timber on this land which he had conveyed was set on fire and destroyed by a locomotive of the defendant Railroad Company. The court in that case held, and we think properly so, that he could only recover nominal damages. In the case of Taylor vs Fickas, 64 Ind. 167, cited by appellant, the owner of the land planted a row of trees on his own land, and along the division line between his land and that of an · adjoining proprietor, the effect of which was to obstruct the passage of drift wood carried upon the land of the adjoining proprietor by the overflow of the Ohio river adjacent to the lands of both proprietors, to the injury of such adjacent land. It was held that no action would lie therefor. Judge Biddle, in delivering the opinion of the court in that case, among other things said: ''In the complaint before us there is no averment of any water course, except, indeed, by way of parenthesis, that the place during floods is a part of the Ohio river, but the facts averred clearly show that it is not upon the bed of the river, nor within its channel, nor between its banks; in short, that it is no part of the water course, but that the flow over the entire surface of the land is occasioned by temporary causes, and is not usually there. The rights of the appellee, therefore, are such as a proprietor may have in surface water, which, as we have seen, is a part of his land, and the injuries or inconveniencies which the appellant is alleged to have suffered are such as arise from the changes, accidents, and vicissitudes of natural causes.'' That case, in our opinion, has no applicability to the case at bar, because in this case it is charged that the appellant, by the erection of its dykes, not only changed the natural channel of the Canadian river, but also deflected its current so as to throw the water upon the appellee's land. Judge Biddle further stated, in his opinion in the case of Taylor vs Fickas: ''While the owners of land may not obstruct water courses to the injury of others, they must be permitted to fence and cultivate their

fields and improve their land in the way which best sub-
serves their interests, without being responsible for the ac-
cidents of floods or the shifting of surface water occasioned
thereby, although sometimes slight and temporary injuries
may result therefrom to adjoining owners. These are acci-
dents which must be borne alike by all." In the case of
Hoard vs City of Des Moine (Iowa) 17 N. W. 527, also cited
by appellant, the court stated: "It is not claimed that the
city obstructed a natural stream by the erection of the levee.
The most that can be claimed from the evidence is that,
after the levee was constructed, the water in time of over-
flows was deeper on plaintiff's lands caused by the levee. It
was not permitted to overflow that part of the city east of
the levee, and pass off in that direction. * * * Every
owner of land has a right to protect himself from overflow
by water from a river, even though by excluding the water
from his own premises he deepen it between his land and
the river. It appears to us that what the plaintiff claims is
that he has a right to plant himself on low ground next to
the river, and insist that overflow water shall pass over his
land onto the land of some other persons. That he has no
such right requires no written argument nor authority to
demonstrate." In the case of Railway Co. vs Stephens, 73
Ind. 278, Judge Woods, in delivering the opinion of the
court said: "With reasonably near approximation to accu-
racy it may be laid down as a general rule that upon the
boundaries of his own land, and not interfering with any
natural or prescriptive water course, the owner may erect
such barriers as he may deem necessary to keep the surface
water or overflowing floods coming from or across adjacent
lands; and for any consequent repulsion, turning aside, or
heaping up of these waters, to the injury of other lands, he
will not be responsible; but such waters as fall in rain and
snow on his land, or come thereon by surface drainage from
or over contiguous lands, he must keep within the bound-

aries, or permit them to flow off without artificial interference, unless, within the limits of his land, he can turn them into natural water courses. This is in accordance with the general principle that such waters are common enemies, which each proprietor may fight off as he will; but, once on his land, they become his property (in a qualified sense, of course), and the maxim applies, 'So use your own as not to injure the property of another.'" In the case of Railroad Co. vs Henry, 44 Ark. 363, cited by appellee, Judge Smith said: "'So far as a diversion of the water of the running stream from its natural channel is concerned, the authorities are not in conflict, but some courts have taken a distinction between running water and surface water. However, the sound rule appears to be that whoever, by artificial means, changes the natural condition of another man's land, whereby he is damnified, ought to answer to him for the damage." As it was expressed by the supreme court of Texas in Railway·Co. vs Donahoo, 59 Tex. 128: "If, by construction of the roadbed and ditches, the surface water is diverted from its usual and ordinary course, and by means of embankments or ditches such surface water is conveyed to any particular place, and thereby overflows land which, before the construction of the road, did not overflow, the company will be liable to the landowner for such injury." See, also, Railroad Co. vs Chapman, 39 Ark. 463. In that case, Judge Eakin, in delivering the opinion of the court, stated: "With regard to running streams, all the authorities, English and American, agree in holding that a riparian proprietor has no right to alter their usual flow in any manner injurious to others above or below him, under any circumstances, whatever may be his necessities, or whatever care he may exercise. The right of each to use the water as it is accustomed to run is absolute. He may not retain it upon his soil by dams and reservoirs, that it may not go on down in its usual course to his neighbor, except the varia-

tion be small, and not unreasonable. Nor can he so obstruct it as to flood the land of his neighbor above. Upon this point the authorities are numerous and uniform. They are to be found in all the text books upon the subject, and citations are unnecessary."

There was testimony tending to show that the building of these dykes by the appellant had not only changed the natural channel of the Canadian river from the side of the river on which these dykes were located to the opposite side of the river, where the appellee's land was located, but that the current of the river when it struck these dykes changed its course, and was forced directly against and upon appellee's land; and as the jury in this case was permitted to view the place where the dykes were located, as well as the river bed and the appellee's lands, their finding as to whether or not these dykes had changed the channel and current of the river to the appellee's damage should not be disturbed; and, as there was testimony to support the finding of the jury in that respect, the trial court properly refused to instruct the jury to return a verdict for the appellant. The trial court in its charge to the jury properly declared the law in this case, and in refusing to charge the jury as requested by the appellant no error was committed, because the court had already instructed the jury that the appellant had a right to erect and maintain the necessary dykes for the protection of its property against the encroachments of the river, but that it had no right to build or maintain dykes or other structures in said river which would change the current and channel of the river, to the injury of the plaintiff's property. The jury must have found that this dyke did change the natural channel of the river, as well as deflect its current, and throw the water over on plaintiff's land, so as to wash away and destroy some 90 acres of it, and, having found that, the question of negligence, as to the construction or maintenance of the

dykes, was not involved in the case. We find no error in this record. On the contrary, the rulings of the trial court, the verdict of the jury, and the judgment in favor of appellee all appear to be regular, just and lawful. The judgment of the court below is affirmed.

SPRINGER, C. J., and CLAYTON, J., concur.