THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS
RAILWAY COMPANY v. SCANTLAND ET AL.

[No. 18,319.   Filed November 29, 1898.]

NEGLIGENCE.— *Constructing Building Near Railroad Track.*—Constructing a building adjoining a railroad right of way, and storing lumber therein to dry, will not amount to such negligence as to preclude a recovery against the railroad company for the destruction of same by fire originating from sparks escaping from its locomotives.   *pp. 489, 490.*

SAME.— *Railroads.— Fires.*— Plaintiffs will not be held guilty of such negligence as to prevent a recovery against a railroad company for the value of a warehouse and contents destroyed by fire originating from sparks escaping from defendant's locomotive because it was shown that one of the plaintiffs a short time before the fire saw the engine passing the warehouse, throwing many sparks, and did not examine the building, where it was shown that plaintiffs used all available means to put out the fire and save their property as soon as they discovered it.   *pp. 491, 492.*

EVIDENCE.—*Instruction.*—Where, in an action against a railroad company for damages on account of property destroyed by fire escaping from a passing locomotive, a screen used as a spark arrester was exhibited before the jury without identifying the same as the one used on the locomotive at the time of the escape of fire, and evidence was introduced concerning same upon the presumption that the screen was properly in evidence, no error was committed in refusing to instruct the jury that it was their duty not to consider as evidence any fact which they may have observed or seen while viewing or examining such screen.   *pp. 494, 495.*

From the Randolph Circuit Court.   *Affirmed.*

*S. O. Bayless, John T. Dye* and *Thompson & Canaday*, for appellant.

*J. J. Chenney, J. S. Engle* and *W. G. Parry*, for appellees.

HOWARD, J.—It is alleged in the complaint in this case that on January 20, 1896, appellees owned a large warehouse in the town of Lynn, in Randolph county, on grounds adjoining appellant's right of way.   The warehouse was used principally for storing and dry-

ing "patent coil elm hoops," manufactured by appellees. It is further alleged that the appellant, "in running its locomotive and train of cars on said road, carelessly and negligently omitted to use sufficient and proper spark arresters and proper appliances to keep the same in proper repair and condition to prevent the emission of sparks from said locomotive; that the appellant's said railroad passed to and within sixty-six feet of appellees' said store room, in which were situate, packed, and stored said patent coil elm hoops and oak lumber aforesaid, which said wareroom and patent coil elm hoops were of inflammable nature, and liable to take fire, which appellant well knew; that on the evening of the day aforesaid appellant's train of cars, drawn by one of its locomotive engines, and controlled by its employes, ran on and along the railroad aforesaid near to said wareroom, and, the appellant having negligently omitted and failed to exercise due care to prevent the escape of sparks of fire from the smokestack, the said smokestack threw out streams of sparks and blazing fragments of coal and wood, which were by force and labor of the locomotive expelled high into the air in large volumes at each labor and expulsion of the engine, and carried by the wind towards said warehouse, and set fire to the same and to said patent coil hoops and lumber, whereby they were consumed."

The only objection raised to the complaint is that it is not sufficiently specific, in not stating whether the railroad or the warehouse was first constructed. It does not seem that this objection can be well taken. The question is rather whether appellant was negligent in using an insufficient spark arrester, and whether appellees were themselves chargeable with contributory negligence, in relation to the destruction of the warehouse. It cannot be said to be negli-

gence merely to construct a warehouse upon lands adjoining a railroad right of way, and to store elm hoops there to dry, whether before or after the building of the railroad. Indeed, in a subsequent part of their brief, counsel for appellant admit as much, saying: "We do not, however, insist in this case that the mere fact that appellees located their dry house adjoining the right of way, and at the time of the fire were maintaining it there, filled with dry, combustible material, is such negligence *per se* as would prevent a recovery."

The facts were found by a jury, and a special verdict, by way of answers to nearly two hundred interrogatories, was returned by the jury. The only question left in dispute by these answers is, whether the appellees were themselves chargeable with negligence contributing to the destruction of their property.

The jury find that the spark arrester used on the engine was of the kind known as the extension front spark arrester, the best and most approved in general use. They find, however, that the spark arrester in use in this case was not properly adjusted when first put in new; that it was "not properly and securely fastened at the edge of the nettings," and the "door-frame at man-hole not well fitted, leaving openings at corner;" that it did not "prevent sparks, coals, or cinders from being carried out of the extension front, through the smokestack;" that there were holes and broken places in the nettings; that several of the wires near the top were broken and a part of them missing at the time of the fire; that there were several holes near the top caused by wires being burned or worn away, from one to two inches long, and from one-fourth to three-eighths inch wide; that, in consequence, fire was thrown out of the smokestack while passing appellee's property, many of the sparks being

of the size of large grains of corn and some as large as the end of a man's finger; and that these sparks were thrown on top of and into appellees' building, setting fire to the patent coil elm hoops therein. Failure properly to inspect and repair the spark arrester is also found.

It is conceded that these and other findings show negligence on the part of appellant. The contention is, however, made, that appellees were also negligent, since they knew that their building was of wood, and contained dry hoop poles; knew that the building was near to the railroad, within fifty-nine feet of the track; and knew that there were open ventilators on the side of the railroad; and since, a little before the fire, one of the appellees saw the engine laboring with a heavy freight train, and saw showers of sparks flying from the smokestack as the engine approached, and yet that he passed on to his supper, a short distance away. This contention seems to take it for granted that it was appellees' duty to keep a constant watch on their building whenever an engine throwing many sparks was passing. Yet the jury also find that appellant likewise knew all the conditions as to appellees' property. It is, besides, found that the warehouse was within the corporate limits of the town, was situated near other wooden buildings, mills, factories, and residences, all standing along the railroad track. It is further found that it was raining on that day, and that the ground, railroad track and buildings were damp and wet from the recent rains. The warehouse had been built about four years, during which time there had been no material change in the grade or situation of the railroad track. No reason therefore appears why appellees should suppose their building in more danger of being set fire to by sparks from the engine on this occasion than at any time during the previous

four years. Of course it was barely possible that fire might be communicated to the property at any time. But, as said in *Toledo, etc., R. R. Co.* v. *Loop,* 139 Ind. 542, "all peril may not be averted; it is the immediate and probable, not the remote and barely possible, that we are called upon to guard against." The building was properly constructed for the purposes for which it was used, and was properly located for the making of shipments on the railroad. ' The fire was discovered almost immediately, and the jury find that appellees used "all available means to put out the fire, and save their property when and as soon as they discovered the fire." If appellees should be held negligent for the reasons urged by counsel, it is difficult to see how property owners who fail to keep a constant watch upon their buildings could ever collect from insurance companies when these buildings are destroyed by fire.

The only conflict in the evidence is as to the condition of the spark arrester at the time the fire was communicated to the warehouse. Counsel for appellant use thirty-seven closely printed pages of their brief in arguing that the jury ought to have accepted the evidence adduced by them to show that the spark arrester had frequently been properly inspected previous to that time, and that it was then in good repair and correctly adjusted to its place in the engine.

But even appellant's witnesses, particularly on cross-examination, gave evidence from which the jury were authorized in making the findings complained of as to the defective condition of the netting of the spark arrester. This netting was brought into court by appellant, and a great part of the evidence in regard to it was given to the jury on inspection, as it was examined in their presence by the several witnesses.

One of appellant's witnesses, on having his attention called to a certain wire, and being asked if it was burned in two, answered: "I don't know whether it was burned in two or broken." His attention being further called to several other wires, and being asked if they also presented "the appearance of having been burned in two," he answered: "Well, they probably came apart where it was pretty warm, that is, subject to considerable heat at all times. The heat of the smokestack under normal conditions is about 800." Asked of other wires, if they were nearly in two, and still others as to being "burned off, entirely in two," he said: "Yes, there are several of them through there." Asked of six in a row if they were not "burned in two," he replied: "Yes, you might find others throughout." It was shown that sparks of the size of large grains of corn had been thrown from the smokestack to the distance of one hundred and twenty feet; and one of appellant's witnesses answered that with proper spark arrester appliances, even with the wind blowing in the most favorable condition for carrying sparks, they could not be carried to a distance of more than thirty or forty feet, and still retain fire enough to kindle combustible material. He further said that in damp atmosphere the tendency of sparks is to fall quicker to the ground. If to the foregoing evidence, given by appellant's witnesses, we add the testimony of appellees' witnesses relating to the same subject, we must conclude that there was competent and sufficient evidence adduced to support the findings returned by the jury. We have also given careful attention to what is said by counsel as to error by the court in its rulings on the admission of evidence, but have found the objections not well taken, and do not deem it necessary to enter into an extended discussion of the questions so raised.

The appellant introduced the screen in question before the jury, and a large part of the evidence was in regard to the condition of this screen, thus exhibited to the jury. While, technically, the screen was not introduced in evidence, it was in effect so introduced. Indeed when counsel for appellant asked an expert whether in his opinion certain wires near the top of the screen were broken by reason of any use of it as a spark arrester, and counsel for appellees objected to the question for the reason that the screen was not identified as the defective screen in question, the court overruled the objection, and this question and others following it were allowed on the assumption that the screen before the jury was the same used in the locomotive from which the fire was alleged to have been communicated to appellees' building.

As relating to this screen the following instruction was asked by appellant and refused by the court: "You have been permitted during this trial to personally view and examine a certain wire screen or netting, under instructions of the court. You are now instructed that it will be your duty not to consider as evidence any fact which you may have observed or seen while viewing or examining such screen or netting." Whether this instruction was abstractly correct or not we need not say. It would certainly have been misleading to the jury to have given it. Counsel do not contend that it was error to have allowed the jury to inspect the netting, but they say, that "The facts disclosed to the jury by this inspection should not have been taken by the jury as evidence in the cause, but only for the sole purpose of aiding them in applying the evidence of the witnesses who testified with reference to the screen, and the other facts and circumstances." Had the instruction included the explanation so now added by coun-

sel it would perhaps have been proper to give it; but to have given the instruction as requested would doubtless have left upon the mind of the jury the impression that the screen as exhibited before them, and as inspected by them under direction of the court was nevertheless not to be regarded by them for any purpose. The screen was brought before the jury by appellant, without objection from appellees, and the jury, under sanction of the court, were permitted to examine it. That an instruction should afterwards be given which should practically say to the jury that they must pay no attention to the screen so exhibited to and examined by them, seems very questionable. The instruction was properly refused as misleading. See *Story* v. *State*, 99 Ind. 413-416; *Davidson* v. *State*, 135 Ind. 254-259.

Other minor questions raised by counsel need not, as we think, be considered. They are not of a nature to require a reversal of the judgment. Judgment affirmed.

Hackney, J., took no part in the decision of this appeal.