FREEMAN v. NATHAN et al. †

(Court of Civil Appeals of Texas. Austin. May 8, 1912. Rehearing Denied June 19, 1912.)

1. RAILROADS (§ 459*) — FIRES — BUILDINGS NEAR RIGHT OF WAY—CONTRIBUTORY NEGLIGENCE.

Plaintiff constructed and maintained a frame barn with an iron roof on land immediately adjoining defendant's railroad right of way. The barn had no openings on the side toward the railroad and was placed there before the railroad was constructed, but was subsequently destroyed by fire started by a passing train. Held, that plaintiff was not negligent as a matter of law in maintaining and using the barn at that place, after the railroad was constructed adjacent thereto.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1677–1680, 1684; Dec. Dig. § 459.*]

2. RAILROADS (§ 460*) — FIRES — DANGEROUS PREMISES.

Where shucks and other combustible material was carried by the wind from plaintiff's premises to the right of way of defendant's railroad, and defendant was negligent in permitting such material to remain there, he could not charge plaintiff with contributory negligence in permitting such material to accumulate on his premises in such a manner that the wind might carry it onto the right of way.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1681; Dec. Dig. § 460.*]

---

**3. NEGLIGENCE (§ 1*)—WHAT CONSTITUTES.**

Actionable negligence is the doing of something which duty to another requires not to be done, or omitting to do something which duty requires to be done, and is not a mere failure to act with ordinary prudence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 1; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 5, pp. 4743–4763; vol. 8, pp. 7729–7731.]

**4. RAILROADS (§ 481*)—FIRES—EVIDENCE.**

Where plaintiff alleged that a fire which destroyed his barn was caused by sparks from defendant's engine which passed at a particular time, which averment was met by a general denial, and plaintiff offered evidence that, because of curves and a steep grade near his property, defendant's engines were required to labor and exhaust heavily while passing, and that that was true of the engine in question, while defendant claimed that a heavy exhaust would cause the sparks to be thrown higher into the air, and in all probability they would be extinguished before reaching the ground, evidence that other engines at other times on defendant's road emitted sparks and set out fires near the same place was admissible to rebut defendant's theory.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1717–1729; Dec. Dig. § 481.*]

**5. RAILROADS (§ 481*)—FIRES—DESTRUCTION OF PROPERTY—COST OF REPAIR—EVIDENCE.**

In an action against a railroad for burning plaintiff's property, evidence as to the manner and cost of repairing the injury done was admissible.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1717–1729; Dec. Dig. § 481.*]

**6. RAILROADS (§ 485*)—FIRES—DESTRUCTION OF PROPERTY—INSTRUCTIONS.**

Where, in an action for destruction of plaintiff's property by fire set by defendant's engine, plaintiff alleged that defendant was negligent in the operation of the engine, the court charged that defendant was required to exercise ordinary care to equip the engine with the most approved appliances in general use to prevent the escape of sparks, cinders, and coals, and to use ordinary care to keep such appliances in repair, and properly fitted and adjusted, and also charged as to the wetting of the fuel used in such engines if, in the exercise of ordinary care, such fuel should be wetted, and also as to emptying the ash pan of such engine, if in the exercise of ordinary care such ash pan should be emptied to prevent the escape of sparks, cinders, and coals from the engine, and that defendant was liable for damages from fires directly and proximately caused by its negligent failure to exercise such ordinary care in any of the respects named, etc., *held*, that the charge did not impose too great a burden on defendant by reference to the wetting of the fuel and emptying the ash pan.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1747–1756; Dec. Dig. § 485.*]

**7. TRIAL (§ 234*) — INSTRUCTIONS — BURDEN OF PROOF.**

Where the court distinctly charged that the burden was on plaintiff and interveners to establish their case by a preponderance of the evidence, and that they could not recover unless they did so, the charge could not be regarded as objectionable in assuming that plaintiff had a cause of action and should prevail unless defeated by the matters relied on by defendant.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 534–538, 566; Dec. Dig. § 234.*]

Appeal from District Court, Falls County; Richard I. Munroe, Judge.

Action by I. J. Nathan and others against T. J. Freeman, receiver of the International & Great Northern Railroad Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Appellee I. J. Nathan brought this suit against T. J. Freeman, as receiver of the International & Great Northern Railroad Company, to recover for the destruction by fire of the plaintiff's electric light and ice plant and stock of supplies in connection therewith, in the city of Marlin, Tex., on September 17, 1909. The fire was alleged to have been caused by the negligence of the receiver, which was denied in the defendant's answer, wherein it was alleged as a defense that the plaintiff was guilty of contributory negligence. Five insurance companies intervened and claimed the right to recover against the defendant, on account of having been compelled to pay certain policies of insurance upon the property referred to. There was a jury trial, resulting in a verdict and judgment in favor of the plaintiff and the interveners for $21,000, and the defendant has brought the case to this court for revision.

Omitting certain formal parts, the judge instructed the jury as follows:

"You are instructed that the defendant receiver, in running trains over the road of which he is receiver, is required to exercise ordinary care to equip the engine or locomotive drawing such train with the most approved appliances in general use to prevent the escape of sparks, cinders, and coals therefrom, and to exercise ordinary care to keep such appliances in repair and properly fitted and adjusted, and to exercise ordinary care to keep the land included within the right of way sufficiently free of inflammable grass, weeds, and other matter as to prevent the same catching fire from sparks, cinders, or coals escaping from passing engines, and communicating such fire to adjacent property, and to exercise ordinary care in respect to the wetting of the fuel used in such engines if in the exercise of ordinary care such fuel should be wetted, and to exercise ordinary care in respect of the emptying of the ash pan of such engine, if in the exercise of ordinary care such ash pan should be emptied, to prevent the escape of sparks, cinders, or coals from such engine. And the defendant receiver, if liable for damages from fires directly and proximately caused by his negligent failure to exercise such ordinary (care) in any of the respects above named, unless, however, the person or persons sustaining such damage have been guilty of contributory negligence, as hereinafter defined. But when the defendant receiver has exercised such ordinary care in each of the respects above named, he has complied with the requirements of the law, and is not liable for any damage from any

fires set out by said engines; nor is he liable for any such damage, when the person or persons sustaining such damage have been guilty of contributory negligence as hereinafter defined.

"Ordinary care is such care as an ordinarily prudent person would exercise under the same or similar circumstances. If therefore you believe from the evidence that on September 17, 1909, sparks, cinders, or coals escaped from the defendant's engine No. 122 and set fire to inflammable grass or weeds or other material on land included within the right of way, and through the agency of such inflammable grass, weeds, or other material set fire to the plaintiff's premises and improvements; and if you further believe from the evidence that the defendant failed to exercise ordinary care to equip said engine with the most approved appliances in general use to prevent the escape of sparks, cinders, and coals, or failed to exercise ordinary care to keep such appliances in repair and properly fitted and adjusted, or failed to use ordinary care to keep the land included within the right of way sufficiently free of inflammable grass, weeds, and other matter as to prevent the same catching fire from sparks, cinders, or coals escaping from such engine and communicating such fire to adjacent property, or failed to exercise ordinary care in respect of the wetting of the fuel used, in such engine, if in the exercise of ordinary care such fuel should be wetted, or failed to exercise ordinary care in respect of the emptying of the ash pan of such engine, if in the exercise of ordinary care such ash pan should be emptied; and if you further believe from the evidence that the setting of the plaintiff's property on fire was directly and proximately caused by the defendant's negligent failure, if any, to exercise such ordinary care—then you will return a verdict in favor of the interveners, or of the interveners and the plaintiff, as hereinafter charged, for the amount of the damage, if any, sustained by the plaintiff by reason of such fire, unless you believe from the evidence that the plaintiff was guilty of contributory negligence, as hereinafter defined.

"If, however, you do not believe from the evidence that sparks, cinders, or coals escaped from defendant's engine No. 122 and set fire to inflammable grass or weeds or other material on land included within the right of way, and through the agency of such inflammable grass or weeds or other material set fire to the plaintiff's property, you will return a verdict in favor of the defendant; or if you do not believe from the evidence that the defendant failed to exercise ordinary care to equip said engine with the most approved appliances in general use to prevent the escape of sparks, cinders, or coals, and do not believe that he failed to exercise ordinary care to keep such appli-

ances in repair and properly fitted and adjusted, and do not believe that he failed to exercise ordinary care to keep the land included within the right of way sufficiently free of inflammable grass and other matter to prevent the same from catching fire from sparks, cinders, or coals escaping from said engine and communicating said fire to plaintiff's property, and do not believe that he failed to exercise ordinary care with respect to the wetting of the fuel used in said engine, or that in the exercise of ordinary care such fuel need not be wetted, and do not believe that he failed to exercise or use ordinary care in respect to the emptying of the ash pan of such engine, or that in the exercise of ordinary care such ash pan need not be emptied, you will return a verdict for the defendant, though you may believe that sparks, cinders, or coals escaped from said engine and set fire to material on the right of way, and through its agency set fire to the plaintiff's property.

"In determining the amount of the plaintiff's damage, if any, the difference between the market value of the real estate just before and just after the fire, together with the interest thereon from the date of the fire at the rate of 6 per cent. per annum, would be the measure of damages to such real estate. If the real estate had no market value, then the difference between the reasonable value of the real estate just before and just after the fire, together with interest thereon from the date of the fire at the rate of 6 per cent. per annum would be the measure of damage. By real estate as used herein is meant the ground and the structures thereon. As to property other than real estate, the measure of damages in the event such property was destroyed would be the market value of such property at the time and place of the fire, together with interest thereon from the date of the fire at the rate of 6 per cent. per annum. If such property had no market value, the measure of damages would be the reasonable cash value of such property at the time and place of the fire, together with interest thereon from such date at the rate of 6 per cent. per annum. If such property was not destroyed, but was only damaged, the measure of damages would be the difference between the market value thereof just before and just after the fire, at the place of the fire, together with interest thereon from the date of the fire at the rate of 6 per cent. per annum. If, however, such property had no market value, then the measure of damages would be the difference between the reasonable cash value just before and just after the fire, at the place of the fire, together with interest thereon from the date of the fire at the rate of 6 per cent. per annum. By market value of any item of property, as the term is used herein, is meant the price at which such an item of

property is currently bought and sold in the market.

"If the amount of such damage, if any, so determined should equal or exceed the sum of $14,000, then your verdict should be in favor of the Milwaukee Mechanics' Insurance Company of Milwaukee, Wis., and against the defendant for $2,000; in favor of Royal Insurance Company of Liverpool for $5,000; in favor of Northern Assurance Company, Limited, of London, England, for $2,000; in favor of Commercial Union Assurance Company of London for $2,000; in favor of Phenix Insurance Company of Brooklyn, N. Y., for $2,000; in favor of National Fire Insurance Company of Hartford for $1,000; and in favor of the plaintiff I. J. Nathan for the excess, if any, of the amount of damage over and above said amount of $14,000. If the amount of such damage, if any, so determined should be less than $14,000, your verdict should be in favor of each of said insurance companies for such a proportion of the amount of the damage as the sum mentioned above in connection with the name of such company bears to $14,000.

"You are instructed that if you believe from the evidence that sparks, cinders, or coals escaped from the defendant's engine No. 122 and set fire to inflammable grass or weeds or other material on land included within the right of way, and through the agency of such grass, weeds, or other material set fire to plaintiff's property, such fact constitutes a prima facie case of negligence on part of the defendant, and in the absence of rebutting evidence sufficient to overcome such prima facie case of negligence, and in the absence of contributory negligence on the part of the plaintiff, as hereinafter defined, will render the defendant liable for the injury occasioned thereby. If, however, you believe from the evidence that the defendant exercised ordinary care to equip such engine with the most approved appliances in general use to prevent the escape of sparks, cinders, and coals, and that the agents and employés of the defendant in charge of said engine used ordinary care in operating the same, in respect to the wetting of the fuel used, if in the exercise of ordinary care such fuel should be wetted, and in respect to the emptying of the ash pan, if in the exercise of ordinary care such ash pan should be emptied, to prevent the escape of sparks, cinders, or coals and fire resulting therefrom is rebutted, and, if you so believe, you will find for the defendant, unless you believe that the defendant had permitted inflammable grass or weeds or other material to be and remain on the land included within the right of way, and that sparks, cinders, or coals escaping from said engine set fire to such material and was communicated to the plaintiff's property, and that the defendant failed to exercise ordinary care to keep the land included within such right of way free of such inflammable material. In this event, as hereinbefore charged, you will find for the interveners, or for the interveners and the plaintiff, unless you believe that the plaintiff was guilty of contributory negligence as next hereinafter defined.

"If you believe from the evidence that the plaintiff or any of his employés observed the fire in time to have arrested it and prevented the damage to the plaintiff's property, and that the plaintiff or any of such employés failed to exercise ordinary care to arrest such fire and prevent such damage; or if you believe from the evidence that an ordinarily prudent person under the same or similar circumstances as the plaintiff would not have made use of his lot as a place whereon to feed stock or to store feed stuff in a barn or shed; or if you believe that the plaintiff permitted shucks or hay to be scattered over said lot in such wise as an ordinarily prudent person under the same or similar circumstances would not have permitted; or if you believe that the plaintiff permitted hay or shucks to be scattered on the defendant's right of way, and that an ordinarily prudent person under the same or similar circumstances would not have permitted the same; and you further believe that such acts or omissions, if any, proximately contributed to cause the damage to the plaintiff's property—you are instructed that such acts or omissions, if any, would be contributory negligence, as hereinbefore referred to, and that the plaintiff or interveners would have no right to recover. By acts or omissions proximately contributing to cause damage to the plaintiff, as used in this charge, are meant acts or omissions without which the damage would not have occurred, and from which it followed as a natural and probable consequence, which could have been reasonably anticipated.

"The burden is on the plaintiff and interveners to establish their cause by a preponderance of the evidence, and unless they have done so they cannot recover. But the burden is on the defendant to establish by a preponderance of the evidence contributory negligence on the part of the plaintiff, but in determining this issue you will consider all the evidence before you. Unless he has done so, such plea will not establish any defense to this action.

"You are the exclusive judges of the facts proven, of the credibility of the witnesses, and of the weight to be given to their testimony. But you are bound to take the law from the court which is herein given you and in the special charges and be governed thereby."

In addition to the main charge, the trial court gave the following special charges requested by the defendant:

"If you believe from the evidence in this

case that the locomotive engines of the defendant scattered sparks of fire upon the premises of the plaintiff and thereabouts from time to time as they passed said premises, and that the plaintiff Nathan knew this before the fire, and of the danger, if any, of fire to his premises therefrom, and notwithstanding this knowledge, if any, so maintained his premises as to allow shucks and hay to be scattered in his lot where he fed his live stock and from his lot upon defendant's right of way, if you should so find from the evidence, and if you believe that a person of ordinary prudence, with the knowledge, if any, of the danger of fire to his premises, if any, under the same or similar circumstances, would not have maintained said premises as you find the plaintiff Nathan did, and you find that such maintenance was negligence, and was the proximate cause of plaintiff's premises being destroyed by fire, you will find for the defendant against both plaintiffs, and the form of your verdict should be: 'We, the jury, find for the defendant.'

"If you believe from the evidence in this case that the plaintiff Nathan allowed shucks and hay to be scattered from his lot where he fed his live stock, in and along the right of way of defendant, and you believe that a person of ordinary prudence in the exercise of ordinary care for the safety of his property from fire would not have done this, and that it was negligence upon the part of the plaintiff Nathan, and but for which negligence, if any, his property would not have been destroyed by fire, you will find for the defendant against both plaintiffs, and the form of your verdict should be: 'We, the jury, find for the defendant.'

"If you find from the evidence that plaintiff's barn and other premises were set fire to by some other means than by fire from defendant's engine, or if you fail to find from the evidence said premises were set fire to and burned by sparks of fire, cinders, or coal escaping from defendant's engine, or if you find said premises were set fire to and were burned by means of fire from defendant's engine, but fail to find that the same was the result of negligence on the part of defendant as submitted to you, you will find for defendant.

"If you believe from the evidence in this case that an employé of the plaintiff Nathan observed this fire in question in time to have arrested it and prevented the destruction of plaintiff's premises, and failed to exercise that care which a person of ordinary prudence would have exercised under the same or similar circumstances in the arrest of said fire and the prevention of the destruction of plaintiff's property by fire, and that such failure was negligence and was the proximate cause of the destruction of plaintiff's premises, you will find for the defendant, and the form of your verdict should be: 'We, the jury, find for the defendant.'

"If you believe from the evidence that the plaintiff Nathan or his employés were guilty in respect to maintaining the lot and barn in question adjacent to defendant's right of way by allowing hay and shucks to be scattered alongside thereof, if any, next to the defendant's right of way, and that this was such an act or omission as a person of ordinary prudence would not have done in view of the probable danger from fire, if any, and you find that this was negligence and but for which the fire would not have burned plaintiff's premises, you will find for the defendant, no matter how negligent you may find the defendant to have been.

"If you believe from the evidence that the plaintiff Nathan knew that there was grass and weeds upon defendant's right of way, and that they were dry and easily ignited, and knew that defendant's engines emitted sparks, and knew that there was danger therefrom of fire to his premises, and you believe that a person of ordinary prudence under the same or similar circumstances would have exercised ordinary care to have kept hay and shucks, if any, away from said grass and weeds, if any, and the failure, if any, to do so was negligence, and but for which plaintiff's premises would not have been burned, you will find for the defendant."

Because of the manner in which the case is presented in this court, it is not deemed necessary to make specific and detailed findings of fact. The only assignment of error in appellant's brief complaining of the verdict merely asserts that it is excessive in amount, and that the plaintiff was not entitled to more than one-third of the amount recovered. That assignment is not followed up in appellant's brief with any statement whatever of the evidence pertaining to the assignment; the writer of the brief having contented himself with the statement that the evidence is so voluminous that it is impossible to point out all of it relevant to the assignment. We hold that the statement referred to constitutes no excuse for the failure to comply with the rule upon the subject, and that an appellant has no right to ask this court to perform the labor required of him by the rules, upon no other excuse than that the task was too great for him to perform. However, in reply to that assignment counsel for appellee in their brief have made a statement concerning the testimony, which has not been controverted by appellant, and which shows that the verdict is not excessive. Therefore, and in view of what has been said in reference to the manner in which the case has been presented in this court, we content ourselves with stating as findings of fact that the verdict involves and the testimony supports findings in favor of the plaintiff upon all the material issues of fact submitted to the jury.

Wilson & Dabney, of Houston, and Baker & Baker, of Waco, for appellant. Locke & Locke, of Dallas, for appellees.

KEY, C. J. (after stating the facts as above). 1. The first and second assignments of error present the proposition that the uncontroverted proof shows that the plaintiff was guilty of contributory negligence, as matter of law, and therefore the court should have given a peremptory instruction to the jury to find for the defendant. Appellant contends that the proof shows: (1) That Nathan knew of the danger of fire from engines passing his barn; (2) that he was warned of this danger; and (3) that he maintained his barn next to the railroad and allowed shucks, hays, and other combustible matter to be scattered inside and outside of his lot where it would likely be ignited by sparks from passing locomotives. Appellant's brief cites some testimony tending to support all of the propositions referred to; but, as pointed out in appellee's brief, appellant has not, as required by the rules, given even the substance of all of the testimony bearing upon the question; and, with the exception of the fact that the plaintiff maintained his barn next to the railroad, the propositions asserted were not shown by uncontroverted testimony.

[1] The plaintiff's barn was a frame building, containing no doors, windows, or other openings on the side toward the railroad, and was covered with an iron roof. While it was located near the railroad track and adjacent to the right of way, it was placed there long before the railroad was constructed. It was a lawful and proper structure; and that the plaintiff was not guilty of contributory negligence, as matter of law, in maintaining and using it at that place after the railroad was constructed adjacent to it, is well settled by the great weight of authority. In support of this proposition appellees have cited quite an array of decisions; and, while they have not all been verified by us, those examined have been found to be in point, and, for future reference, we here copy the entire list: T. & P. Ry. Co. v. Rutherford (1902) 28 Tex. Civ. App. 590, 68 S. W. 825 (writ of error denied); St. L. & S. W. Ry. Co. v. Miller (1901) 27 Tex. Civ. App. 344, 66 S. W. 139 (writ of error denied); T. & P. Ry. Co. v. Wooldridge, 63 S. W. 905; Rutherford v. T. & P. Ry. Co., 61 S. W. 422; Clark v. Dyer, 81 Tex. 339, 16 S. W. 1061; McFarland v. G., C. & S. F. Ry. Co., 88 S. W. 450; St. L. S. W. Ry. Co. v. Sharp, 131 S. W. 614; G., C. & S. F. Ry. Co. v. Lowe, 2 Willson, Civ. Cas. Ct. App. § 650; Ft. Worth & D. C. Ry. Co. v. Ratliff, 2 Willson, Civ. Cas. Ct. App. § 682; G., C. & S. F. Ry. Co. v. Fields, 2 Willson, Civ. Cas. Ct. App. § 795; H. & T. C. Ry. Co. v. McDonough, 1 White & W. Civ. Cas. Ct. App. § 654; Salmon v. D. L. & W. R. Co., 38 N. J. Law, 5, 20 Am. Rep. 356; D. C. & W. R. Co. v. Salmon, 39 N. J. Law, 299, 23 Am. Rep. 214; Snyder v. P. C. & S. L. Ry. Co., 11 W. Va. 14; Flynn v. S. F. & S. J. R. Co., 40 Cal. 14, 6 Am. Rep. 695; P. & R. R. R. Co. v. Schultz, 93 Pa. 341; Kendrick v. Towle, 60 Mich. 363, 27 N. W. 567, 1 Am. St. Rep. 526; Patton v. S. L. & S. F. Ry. Co., 87 Mo. 117, 56 Am. Rep. 446; Mathews v. S. L. & S. F. Ry. Co., 121 Mo. 298, 24 S. W. 591, 25 L. R. A. 161; Burke v. L. & N. Ry. Co., 54 Tenn. 451, 19 Am. Rep. 618; L. & N. Ry. Co. v. Short, 110 Tenn. 713, 77 S. W. 936; G., C. & S. F. Ry. Co. v. Johnson, 54 Fed. 474, 4 C. C. A. 447; P. C. & S. L. Ry. Co. v. Jones, 86 Ind. 496, 44 Am. Rep. 334; C., C., C. & S. L. Ry. Co. v. Scantland, 151 Ind. 488, 51 N. E. 1068; Wabash R. Co. v. Miller, 18 Ind. App. 549, 48 N. E. 663; Richmond & D. R. R. Co. v. Medley, 75 Va. 499, 40 Am. Rep. 734; So. Ry. Co. v. Patterson, 105 Va. 6, 52 S. E. 694, 8 Ann. Cas. 440; C., N. O. & T. P. Ry. Co. v. Barker, 94 Ky. 71, 21 S. W. 347; C., N. O. & T. P. Ry. Co. v. Cecil (Ky.) 90 S. W. 585; Jacksonville, T. & K. W. Ry. Co. v. Peninsular Land, etc., Co., 27 Fla. 1, 157, 9 South. 661, 17 L. R. A. 33, 65; Benedict Pineapple Co. v. Atl. C. L. R. Co., 55 Fla. 514, 46 South. 732, 20 L. R. A. (N. S.) 92; Erickson v. Pa. R. Co., 170 Fed. 572, 95 C. C. A. 652; L. & N. Ry. Co. v. Malone, 116 Ala. 600, 22 South. 897; So. Ry. Co. v. Darwin, 156 Ala. 311, 47 South. 314, 130 Am. St. Rep. 94; Grand Trunk Ry. Co. v. Richardson, 91 U. S. 454, 23 L. Ed. 356; Mississippi Home Ins. Co. v. L. N. O. & T. R. Co., 70 Miss. 119, 12 South. 156; A. & V. Ry. Co. v. Ætna Ins. Co., 82 Miss. 770, 35 South. 304; Cook v. Champlain Transp. Co., 1 Denio (N. Y.) 91; Walker v. C., R. I. & P. Ry. Co., 76 Kan. 32, 90 Pac. 772, 12 L. R. A. (N. S.) 624, 123 Am. St. Rep. 119, 13 Ann. Cas. 1204; L. & N. R. Co. v. Beeler, 126 Ky. 328, 103 S. W. 300, 11 L. R. A. (N. S.) 930, 128 Am. St. Rep. 291, 15 Ann. Cas. 913; Boston Excelsior Co. v. B. & A. R. Co., 93 Me. 52, 44 Atl. 138, 47 L. R. A. 82; Kalbfleisch v. Long Island R. Co., 102 N. Y. 520, 7 N. E. 557, 55 Am. Rep. 832; E. T. & H. K. Ide v. B. & M. R. R. Co., 83 Vt. 66, 74 Atl. 401; Wyatt v. Seaboard A. L. Ry. Co., 156 N. C. 307, 72 S. E. 383; King v. American Transp. Co., 7 Fed. Cas. No. 7.787.

[2] We also hold that if shucks or other combustible matter was carried by the wind from the plaintiff's premises to the right of way of the railroad, and the defendant was guilty of negligence in permitting them to remain there, it cannot charge the plaintiff with contributory negligence in permitting such combustible material to accumulate upon his premises in such manner as that the wind might carry it to the right of way. Tex. & Pac. Ry. Co. v. Wooldridge, 63 S. W. 905; Tex. & Pac. Ry. Co. v. Rutherford, 28 Tex. Civ. App. 590, 68 S. W. 825. And we

conclude this branch of the case by adopting the following argument and quotations from cited cases contained in appellees' brief:

[3] "Negligence is not the mere failure to act with ordinary prudence. Such failure alone never can give rise to a cause of action or constitute a ground of defense. Negligence is the breach of a duty. It is doing something which duty to another requires not to be done, or omitting to do something which duty requires to be done. A landowner must exercise care not to set fire to his neighbor's property; but no law requires him to refrain from a lawful use of his own property, in order that his neighbor may have no opportunity negligently to set fire thereto. If his neighbor acts negligently, that is his neighbor's fault; and his neighbor, not he, must stand the consequences. The duty to minimize his own loss resulting from his neighbor's negligence does not arise until after the negligence has occurred and the loss is caused or is imminent. Until then he may assume, as everybody has the right to assume, that his neighbor will perform his duty. He is not required to refrain from erecting improvements on his own property, or from using it in any lawful manner, merely that his neighbor may be saved from the consequences of his negligence. Much less is he required to tear down the improvements already erected, and cease using the property for the lawful purpose to which it already has been devoted, merely because his neighbor places dangerous instrumentalities on the adjoining property. A law which would compel such a result would bar all progress and be ruinous in its present consequences. It would not be tolerated as between man and man; and no reason exists why it should be applied as between man and railroad. A railroad, no less than a man, must stand the consequences of its negligence. Indeed, an enlightened public policy, as the courts have uniformly held, forbids that effect shall be given even to contracts secured by a railroad as a common carrier against the results of its own negligence.

"These considerations are sometimes overlooked by the courts in dealing with defenses of contributory negligence in railroad fire cases. But the recent decisions of this and other states show an awakened consciousness of their truth and force; and we think it unquestionably true that the great weight of authority, as well as of reason and legal principle, is that a man is not guilty of contributory negligence who merely uses his own property in a lawful way for a lawful purpose without injury to his neighbors.

"In Cook v. Champlain Transp. Co., supra, the court said: 'The property destroyed was in an exposed and hazardous position, and therefore in more than ordinary danger from mere accidental fires. This risk the plaintiffs assumed, but not the risk of another's negligence. They were on their own land and free to use it in any manner and for any purpose which was lawful. As was correctly observed by the circuit judge: "The plaintiffs had as good a right to erect their mill on the shore of the lake as the defendants had to sail on its bosom." It would be a startling principle indeed, that a building placed in an exposed position on one's own land is beyond the protection of the law; and yet it comes to this result upon the argument urged in this case. A landowner builds immediately on the line of a railroad, as he has an unquestionable right to do; it may be an act of great imprudence, but in no sense is it illegal. Is he remediless if his house is set on fire by the sheer negligence of an engineer in conducting his engine over the railway? There must be some wrongful act or culpable negligence on the part of the plaintiff to bar him on this principle; and neither can be affirmed of any one for simply occupying a position of more or less exposure on his own premises. If the principle urged on the argument is correct, it must be applied in all cases of the same character. The owner of a lot builds upon it, although in close proximity to the shop of a smith. The house is more exposed than it would be at a greater distance from the shop; but is this to exempt the smith from the obligation of care, and to screen him from the consequences of his own negligence? I certainly think not. A horse or carriage on the open ground of the owner may be more exposed to injury than they would be in a yard or a barn. But if damaged by the carelessness of a passer-by, is the owner remediless because he chose to leave them in a place of comparative exposure and hazard? No one, I think, can doubt what the answer to this question should be. I refer to no authorities on this part of the case, for in my opinion none is requisite. It is but clearly to comprehend the principle upon which this species of defense must rest, to see that it has no application to such a case as this. By what criterion, let me ask, are we to determine the hazards of a particular position, and on what ground say that the owner by his own folly has deprived himself of all protection? In this respect everything is comparative, but where is the true standard to be found? A house 40 feet from a steamboat landing is in more hazard than one at the distance of 40 rods; but it is less exposed than one immediately on the wharf. Goods at the window of a shop are less safe than they would be on a shelf at the rear of the room; but is the owner remediless if they are carelessly soiled or broken by some one in the street? We may run through every imaginable variety of position, some of more and some of less exposure and hazard; and we must at last, I think, come to the

conclusion that, while a person confines himself to a lawful employment of his own premises, his position, however injudicious and imprudent it may be, is not, therefore, wrongful, and that his want of due care or judgment in its selection can never amount to negligence, so as thereby to deprive him of redress for wrong done to him by others.'

"In Salmon·v. D. L, & W. R. R. Co., 38 N. J. Law, 5 [20 Am. Rep. 356], Chief Justice Beasley, with reference to a plea of contributory negligence based on an accumulation of dry leaves on the right of way and on the adjoining property, said: 'When this plea, therefore, attempts to fashion a wrong out of such matters, the very essence of legal liability, in this department of torts, is overlooked. Legal negligence does not consist simply of an omission to do that which would have prevented the infliction of damage on another, but, in addition to this, it involves a breach of duty. * * * This plea charges that the plaintiff did not prevent the leaves falling from his trees from being carried by the wind to the land of the defendant, but it altogether fails to show that he was under any legal obligation to do so. If the law annexed such a condition as that to the ownership of land, an action would lie for every leaf that should be blown by the wind from the trees upon such land to the neighboring property. But there is no such obligation known to the law. All land is subject to the servitude of receiving the leaves brought to it in the course of nature, and, as a compensation, can dispose of its own leaves ·in the same manner. The consequence is there was no negligence in the plaintiff's allowing the leaves in question to be carried to the roadway of the defendant, and, that being so, it follows that, being on the land of the defendant rightfully, it became its duty to remove them when it desired to use fire on its land under dangerous conditions. Under the force of the principles thus adopted, it becomes also manifest that the plaintiff is not chargeable with any legal neglect from leaving fallen leaves, the product of the trees, on his own land. It was his right to leave them there. A person is not called on to anticipate negligence on the part of another, and, by way of prevention, to make provision against its effects. The fire in question, upon the facts stated in these pleadings, was caused solely by the illegal act of the defendant, and there is no provision of law which required the plaintiff to ·foresee the doing of such an act and to put his own land in a situation to withstand its effect. He owed no duty to the defendant in this respect, and, consequently, negligence, in the legal sense, cannot be imputed to him. It never would ˊbe thought that a person owning land in the vicinity of a canal was bound to raise embankment around such property to guard against its overflow from water escaping by negligence from such artificial aqueduct, and yet the contention for the existence of such an obligation would be quite as tenable as is the claim that the present plaintiff was bound to put his property in a condition to withstand a fire from the heedlessness of the defendant. I am aware that it has been ruled in Illinois that the owners of lands contiguous to railroads are as much bound to keep their lands free from dry grass and weeds as the railroad company is on its roadway; but I regard such cases as opposed to well-settled legal principles. If this is the doctrine of the law, it is, I think, entirely manifest that the line of decisions on the subject of the careless use of fire by a proprietor, on his own ˊproperty, which we find in the books, have been rendered in utter disregard to this important condition. The ruling of the courts has invariably been that every proprietor is responsible for the ordinary and natural consequences of the careless use of fire on his own premises, and this without the lease reference to the condition of the adjacent lands, to which the conflagration has spread. No support in any of these authorities can be found for the assumption that, if a landowner places his stacks of grain or hay on the confines of his land, thereby, in a legal point of view, he becomes a contributor to a fire occasioned by negligence on the land of his neighbor. By such an act, it is true, he takes the risk of the consequences of an accidental fire on the contiguous premises, but not of a neglect which he can be called upon neither to anticipate nor to guard against. In the leading case in Illinois it is assumed that the same duty, which will compel the railway company to clear its roadway of combustibles, imposes an equal obligation on the owner of the contiguous land, but the distinction between the cases is obvious: The company uses a dangerous agent, and must provide proper safeguards; the landowner does nothing of the kind, and has a right to remain quiescent.' .

"The Illinois citizens and the Illinois courts long since discovered the error of the early decisions referred to in the foregoing passage. A statute soon afterwards was passed which changed the rule, and in C., C., C. & St. L. Ry. Co. v. Stephens [173 Ill. 430], 51 N. E. 69, the Supreme Court of Illinois, speaking with reference to the law in the absence of such a statute, said: 'In the absence of statutory provision, the weight of authority and sound reasoning is that a person owning lands adjoining the right of way of a railroad company "has a right to presume that the company will not be guilty of negligence, and is not bound to remove dry and combustible matter from his land in an· ticipation of probable negligence on the part of the company. He has a right to use his property in the ordinary and usual way, and, so long as he does so, he will not be deemed guilty of contributory negligence." It

is difficult to perceive upon what principle it can be held that one cultivating land adjoining a railroad right of way is bound to be to the expense of keeping it free from dry grass, stubble, or other combustible matter. He owes no such duty to individual owners nor to the public. There can be no negligence in the failure to do that which there is no duty to do. He can only recover damages occasioned by the railroad company through its negligence. It cannot be seriously contended that he is bound to presume it will be negligent, or, even if he is, that he must abandon the ordinary use of his land, or expend labor to protect himself against such negligent acts.'

"The language which we have quoted is the language of nearly all of the cases cited in the list of authorities under this counter proposition. The contention that the property owner is guilty of contributory negligence in permitting combustible matter to accumulate on his own property was early presented to the Court of Exchequer in England in the case of Vaughan v. The Taff Vale Ry. Co., 3 Hurl. & N. 743. Baron Martin, in the course of the argument, said: 'It would require a strong authority to convince me that because a railway runs along my land I am bound to keep it in a particular state.' The judgment of the court was delivered by Baron Bramwell, and thus disposed of the contention: 'It remains to notice another point made by the defendants. It was said that the plaintiff's land was covered with very combustible vegetation, and that he contributed to his own loss, and Mr. Lloyd very ingeniously likened the case to that of an overloaded barge, swamped by a steamer. We are of opinion this objection fails. The plaintiff used his land in a natural and proper way for the purposes for which it was fit. The defendants come to it, he being passive, and do it a mischief. In the case of the overloaded barge, the owner uses it in an unnatural and improper way, and goes in search of the danger, having no right to impede another natural and proper way of using a public highway. We therefore think the direction was right, the verdict satisfactory, and the rule must be discharged.' The decision so rendered has remained the law of England to this day.

"The Texas cases cited in the list are to the same effect as those already stated. In H. & T. C. R. R. Co. v. McDonough, 1 White & W. Civ. Cas. Ct. App. § 654, the court said: 'It was not negligence "in legal sense for the plaintiff to leave the grass and stubble standing in his field or fence corners. He was not required to remove or destroy either in order to avoid the consequences of the possible or even probable negligence of the defendant. We do not believe that the owners of land adjoining railways are bound to keep their land clear from dry grass and weeds, under the penalty of being chargeable with negligence." Martin v. W. U. R. R. Co., 23 Wis.

437 [99 Am. Dec. 189]; Flynn v. S. F. & J. R. R., 40 Cal. 14 [6 Am. Rep. 695].'

"In G., C. & S. F. Ry. Co. v. Fields, 2 Willson, Civ. Cas. Ct. App. § 795, the court said: 'The owner of land adjacent to a railroad track, having stacks of oats and straw upon his premises, is not guilty of contributory negligence because he permits grass to grow up around said stacks. He is not required to foresee and anticipate the negligence of the company in permitting fire to be communicated to his land from its engines.'

"In Clark v. Dyer, 81 Tex. 339 [16 S. W. 1061], the court said: 'The owner in lawful possession of his land is entitled to use it in any lawful manner he may desire for any purpose for which it may be adapted. The owner in the exercise of this right is not guilty of negligence if he does not anticipate the results and consequences of acts that are remote and may never happen, and of which he is not the promoting cause. * * * The law does not require that the owner shall preserve and guard his premises from the effects of injuries caused by the wrongful acts of another before he is justified in the use thereof. A different rule would virtually deprive the owner of the beneficial rights that flow with and are incident to the enjoyment of his estate; for an attempted use would always be defeated by the results that would flow from the wrongful acts of the promoter of the injury, he being permitted to say, "You cannot hold me for the results of my wrong because you should have anticipated injury would flow therefrom, and you should have guarded against it." The law will not permit the promoter of the wrong to so deprive the owner of the use of his property, or to permit him to use it at his peril. Cool. on Torts, § 679; Salmon v. Railway, 38 N. J. Law, 6 [20 Am. Rep. 356]; Fritz v. Railway, 22 Minn. 404; Blaine v. Railway, 9 W. Va. 254; Underwood v. Waldron, 33 Mich. 233; Wilder v. Railway, 65 Me. 338 [20 Am. Rep. 698]; Railway v. Hendrickson, 80 Pa. 189 [21 Am. Rep. 97]; Emery v. Railway, 102 N. C. 229 [9 S. E. 139, 11 Am. St. Rep. 727]; Kellogg v. Railway, 26 Wis. 228 [7 Am. Rep. 69].'

"In Rutherford v. T. & P. Railway Co., 61 S. W. 422, there was a plea of contributory negligence based on the construction of a barn 50 feet from the main track of the railway, and the storage in it of 125 tons of hay, and the accumulation of shucks around the barn and on the right of way. The San Antonio court, after quoting the charge on this subject, said: 'The charge was in effect an instruction that the plaintiff must forego the use of his property, to prevent it from being destroyed through the negligence of the railroad company. Such is not the law. The railway company, by obtaining a right of way through the country, does not obtain the right to restrict the use of land contiguous to it. In Cooley on Torts, p. 816, it is

said: "Where the injury is inflicted upon the plaintiff upon his premises, it is not contributory negligence that he had not guarded his premises as perfectly against such injuries as prudence might dictate. Thus one's buildings near the line of a railway, by reason of very combustible material, may be peculiarly exposed to take fire from passing engines; but, while the owner must take upon himself all such risks as may result from a careful management of trains, he has a right to redress if his buildings are negligently burned." Several authorities are cited to sustain the text. In section 416, Beach, Contrib. Neg., a case is cited in which it was held that it was not contributory negligence to put up a wooden building upon a person's own property, although it be situated near a dock upon a navigable river, where the house is exposed to fire from steamers touching at the dock, and, if the house is burned by sparks from the steamer, the owner may recover damages, although he put the house there in the face of the risk. "The occupant of land near or even next to a railroad is not chargeable with contributory negligence merely by reason of leaving his land in its natural state, or making any legitimate use of his property. It makes no difference if by so doing his property may be extremely liable to take fire in the event of the railroad train's being negligently managed. He is not required to anticipate such negligence, nor to give up the lawful use of his property in such manner as would be deemed prudent under ordinary circumstances, simply because a railroad has been constructed beside his land. * * * Neither will the knowledge of an adjacent landowner that engines on the road are habitually so mismanaged or defective as to cause frequent fires upon or near the track make any difference." Shear. & R. Neg. § 680. The above quotation is supported by the decisions of every state in the Union, with the exception perhaps of Iowa and Illinois, and is sound and just. No man in the lawful use of his property is chargeable with negligence because he does not anticipate the unlawful acts of others. It is not pretended in this case that appellant had been negligent in any manner, unless it was negligent to put his hay in a house that had been prepared for it upon his own land. The proposition contained in the charge was that, seeing the shucks which appellee had negligently allowed to accumulate on its right of way, he ought to have refrained from the use of his barn. The law does not require any such sacrifice at the hands of the landowner, and he is not required to anticipate negligence and unlawful acts on the part of another, and guard against the same by abandonment of the use of his property. Clark v. Dyer, 81 Tex. 339 [16 S. W. 1061].'

"The same fire that destroyed the barn of Rutherford destroyed also the barn or warehouse of Wooldridge situated near by. The same plea of contributory negligence was made against Wooldridge, and there was evidence that, after corn was shucked in the barn, the shucks were thrown on the ground outside of the barn, where the cattle consumed most of them, but many of them were blown away and lodged on the right of way. The Ft. Worth court passed on the Wooldridge Case, and held, as in the Rutherford Case, that there was no contributory negligence. T. & P. Ry. Co. v. Wooldridge, 63 S. W. 905.

"The Rutherford Case, after having been remanded by the San Antonio court, and tried again in the district court, was appealed to the Dallas court. On the new trial the same contention of contributory negligence was made, and it was contended that the shucks on the right of way came from the Rutherford barn and the Wooldridge barn. The Dallas court, speaking of the claim of contributory negligence, said (T. & P. Ry. Co. v. Rutherford [28 Tex. Civ. App. 590], 68 S. W. 825): 'These contentions are without merit. The appellee's barn was on his own premises, and he was making a lawful use of the same. The contentions insisted on are decided against the appellant in the case of Rutherford v. Railroad Co., 61 S. W. 422, and Railroad Co. v. Wooldridge, 63 S. W. 905.' The Supreme Court denied a writ of error. [28 Tex. Civ. App. 590], 68 S. W. 825.

"In St. Louis & S. W. Ry. Co. v. Miller [27 Tex. Civ. App. 344], 66 S. W. 139, the Dallas court said: 'It was not negligence on Miller's part to build the house on his own lot, and put his goods in the house, although the same was in close proximity to appellant's road where engines were constantly passing. In determining whether or not it was prudent for him to do so, he had a right to assume, as stated in the court's charge, that the company would exercise ordinary care to avoid firing his property; and, if it was fired through the negligence of the company, he was entitled to recover. Clark v. Dyer, 81 Tex. 343 [16 S. W. 1061]; Rutherford v. Railway Co., 61 S. W. 422.' The Supreme Court denied a writ of error. [27 Tex. Civ. App. 344], 66 S. W. 139.

"The foregoing decisions, we think, settle the law of this case with reference to the plea of contributory negligence. If a property owner is not forbidden to erect a barn on his property, or to use a portion of the same as a horse lot, simply because it adjoins a railroad, surely he is not required to tear down a barn already erected or cease to use his horse lot, simply because a railroad acquires the adjoining property and subsequently lays its track thereon, and runs its locomotives on the same."

[4] 2. The assignments of error from 3 to 10, inclusive, complain of rulings by which witnesses were permitted to testify as to other engines at other times on appellant's road emitting sparks and setting

out fires. Appellant's contention is that, as the engine which caused the fire in question was identified as No. 122, it was error to admit testimony tending to show that other engines, on other occasions, had set out fires at other places on appellant's road, in the absence of proof of similar conditions with respect to places, appliances of other engines, tonnage of train, load hauled, mode of operation, and other similar conditions. The plaintiffs submitted testimony tending to show that the defendant had permitted grass and weeds to accumulate upon its right of way, and that the fire originated in the combustible matter referred to. No witness testified to seeing sparks which escaped from the engine fall to the ground and set fire to the combustible matter thereon, and the plaintiffs relied upon circumstantial evidence as proof of that fact. In other words, the fire was discovered upon the right of way soon after the train, pulled by engine 122, had passed. The plaintiff alleged in his petition that the fire was caused by sparks escaping from that engine, and that averment was met by a general denial by the defendant. The plaintiff contended, and introduced evidence tending to show, that because of the curves and steep grade near the plaintiff's premises the defendant's engines were required to labor excessively and exhaust heavily while passing, and that this was true of the engine in question; and therefore the plaintiff contended it was probable that the fire in question was caused by sparks from the engine. The defendant contended that, if the exhaust was heavy, the sparks would be thrown higher into the air, and, in all probability, would be extinguished before reaching the ground; and evidence was introduced tending to support that contention. The other fires testified to by the witnesses were at or near the same place, and proof of them tended to controvert the defendant's and support the plaintiffs' theory, and for that reason such proof was admissible. Dunning v. Maine C. R. Co., 91 Me. 87, 39 Atl. 352, 64 Am. St. Rep. 208; Campbell v. Missouri Pac. Ry. Co., 121 Mo. 340, 25 S. W. 936, 25 L. R. A. 175, 42 Am. St. Rep. 530; Smith v. Old Colony & N. R. Co., 10 R. I. 22; A. & E. R. R. Co. v. Gantt, 39 Md. 115; Koontz v. Oregon Ry. & Nav. Co., 20 Or. 3, 23 Pac. 820; Hawley v. Sumpter V. R. Co., 49 Or. 509, 90 Pac. 1106, 12 L. R. A. (N. S.) 1526; Sheldon v. Hudson River Ry. Co., 14 N. Y. 218, 67 Am. Dec. 155; Illinois Cent. R. Co. v. Scheible (Ky.) 72 S. W. 325; Diamond v. N. Pac. Ry. Co., 6 Mont. 580, 13 Pac. 367; N. Y. P. & N. R. Co. v. Thomas, 92 Va. 606, 24 S. E. 264; St. L. & S. F. R. Co. v. Shannon, 25 Okl. 754, 108 Pac. 401, 21 Ann. Cas. 1209; Piggot v. Eastern Counties Ry. Co., 3 C. B. 229. 3 Man., G. & S., 229; Grand Trunk Ry. Co. v. Richardson, 91 U. S. 454, 23 L. Ed. 356; Sims v. American Ice Co., 109 Md. 68, 71 Atl. 522; Chicago, St. P., M.

& O. Ry. Co. v. Gilbert, 52 Fed. 711, 3 C. C. A. 264; Northern Pacific Ry. Co. v. Lewis, 51 Fed. 658, 2 C. C. A. 446; G., C. & S. F. Ry. Co. v. Johnson, 54 Fed. 474, 4 C. C. A. 447.

In Dunning v. Maine Cent. Ry. Co., supra, the court said: "We think that when the question at issue is whether, as a matter of fact, the fire was caused by any locomotive, other fires caused by defendant's locomotives at about the same time and in the same vicinity may be given in evidence for the purpose of showing the capacity of locomotive engines to set fires by the emission of sparks or the escape of coals. It is admissible as 'tending to prove the possibility, and a consequent probability, that some locomotive caused the fire'—language from Railway Co. v. Richardson, 91 U. S. 464 [23 L. Ed. 356], which has often been cited with approval. To show a possibility is the first logical step. That other engines of the same company, under the same general management, passing over the same track at the same grade, at about the same time and surrounded by the same physical conditions, have scattered sparks or dropped coals, so as to cause fires, appeals legitimately to the mind as showing that it was possible for the engine in question to do likewise. The testimony is illustrative of the character of a locomotive, as such, with respect to the emission of sparks or the dropping of coals. If the possibility be proved, other facts and circumstances may lead to a probability, and then to satisfactory proof."

It has also been held that testimony of the character in question is admissible for the consideration of the jury in determining whether or not the railroad was guilty of negligence in not cutting down and removing the grass and weeds from its right of way. T. & P. Ry. Co. v. Wooldridge, and T. & P. Ry. Co. v. Rutherford, supra.

[5] 3. The eleventh to fourteenth assignments, inclusive, challenge rulings of the court in permitting witnesses to testify as to the manner and cost of repairing the injury done by the fire. The objections presented have been considered, and, without discussing them in detail, they are overruled.

[6] 4. The fifteenth assignment challenges the correctness of the fifth paragraph of the court's charge; the contention being that it placed too great a burden upon the defendant by the reference therein to wetting the fuel and emptying the ash pan. We hold that the matters referred to constituted part of the operation of the engine, and that, as the plaintiff had alleged that the defendant was guilty of negligence in that respect, it was proper for the court to charge as it did in that particular.

[7] 5. The sixteenth assignment complains of the court's charge on the burden of proof; the contention being that it assumed that the plaintiff had a cause of action, and should prevail, unless defeated by the mat-

ters relied on for that purpose by the defendant. That objection is not sustained by the plain reading of the charge, which told the jury that the burden rested upon the plaintiff and interveners to establish their case by a preponderance of the evidence, and that they could not recover unless they had done so.

6. The seventeenth and eighteenth assignments are predicated upon the court's refusal to give two requested instructions upon the question of contributory negligence. These assignments are overruled for the reason that, in the main charge and charges given at appellant's request, the subject of contributory negligence was fully and fairly covered.

7. The nineteenth and last assignment, charging that the verdict is excessive, has been dealt with in our statement of the case; and, for the reasons there stated, that assignment is overruled.

In concluding this opinion we desire to express our commendation of the charge given to the jury by the learned judge who tried this case. But few objections have been urged against it; and it seems to us that it stated and presented the case to the jury fully, clearly, and with more than ordinary accuracy.

We also take pleasure in commending the ability and industry displayed by counsel for appellee in the preparation of the very exhaustive and satisfactory brief which they have filed, and which has been of great assistance to this court.

No reversible error has been shown, and the judgment is affirmed.

Affirmed.