TEXAS & P. RY. CO. v. NEW BOSTON HARDWARE CO.

(Court of Civil Appeals of Texas. Texarkana. May 29, 1913. Rehearing Denied June 12, 1913.)

RAILROADS (§ 461*)—FIRES—CONTRIBUTORY NEGLIGENCE.

The owner of a warehouse within 55 or 56 feet of railroad tracks in which combustible material was stored in front of a window owed the railroad company no duty to anticipate its negligence in permitting the emission of sparks and fire from its engines, or to guard against it by so slatting or latticing the window as to exclude sparks, and its failure to do so was not contributory negligence defeating a recovery for the company's negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1682; Dec. Dig. § 461.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Appeal from District Court, Bowie County; P. A. Turner, Judge.

Action by the New Boston Hardware Company against the Texas & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Glass, Estes, King & Burford, of Texarkana, for appellant. Mahaffey & Thomas, of Texarkana, and O. B. Pirkey, of New Boston, for appellee.

LEVY, J. On March 15, 1912, appellee's warehouse, together with the contents of same, was destroyed by fire. Claiming that its property was set on fire through sparks and fire negligently emitted and ejected from an engine of appellant being there operated at the time, the appellee sued for the loss. Appellant answered by denial, and pleaded that appellee was negligent in permitting combustible materials to accumulate in the building that was burned and in leaving the windows and openings in same without sufficient protection against sparks of fire, and thus causing and contributing to cause the injury. The case was tried to a jury, and the verdict was in favor of appellee. The verdict involves the finding of fact that the warehouse and its contents were destroyed by fire through negligence of the appellant. The evidence supports the finding of negligence on the part of the railway company as pleaded, and as well the amount of the verdict; and such findings of fact are sustained and here adopted.

Appellant requested the following charge: "You are instructed that the undisputed testimony in this case shows that the plaintiff permitted glass or some of them in the sash of the window on the south side of their warehouse to remain broken, and that they thus exposed the contents of the warehouse to the danger, if any there was, of becoming ignited by sparks emitted from passing engines. Now if from the testimony you believe that, considering the location of the said premises, the combustibility, if any, of such contents, or the previous observations of sparks on the floor, a person of ordinary prudence, under the circumstances, would not have permitted the said glass to remain broken or would have done more to protect the said window from sparks than the proofs shows that the plaintiff did, and that if they had done so the house would not have burned, then your verdict should be for the defendant, even though you may believe the engine threw the sparks that set the house afire, and that the spark arresters were not in proper repair." The court refused the charge, and this is made the basis of an assignment of error. The evidence established without dispute that the appellee owned a lot on which was situated a warehouse 30 feet wide by 80 feet long, and with a wall 12 feet high. The width of the warehouse was east and west, and the length thereof north and south. The railway track of appellant is south of the lot, and the distance from the center of the track to the south end of the warehouse is between 55 and 56 feet. The warehouse was a frame building of pine material, and was used by appellee in connection with its store in New Boston as a place for hardware and such other things used by them in connection with their business as hardware merchants, and the warehouse had been so used by appellee for all the time since it had been in business. In the south end of the warehouse, towards the railway track, was a window, located between four and five feet above the floor. The panes of glass in the window were broken out, and had been in that condition for some time before the fire. But strips or slats had been nailed across the window before the fire, and cracks or openings were left between such slats, and were of sufficient width to admit substances of the size of ordinary cinders. Before the fire occurred, there were stored in the warehouse either eight or ten sacks of cotton seed. These were located about ten feet from this window and practically in front of it. There does not appear any design or intention in storing the cotton seed in front of the window. It appears this was the only combustible material stored in that end of the warehouse. The instant fire was caused by cinders from passing engine No. 315 entering the building through the cracks or openings between the slats over the window. The witness Burrows testified that he had on several occasions found cinders and coals in the building about 10 or 15 feet back in the south end, and that the cinders were of the size of a lead pencil and some larger, and that some of the cinders had scorched the floor, and that it had been a week, and possibly a month, before the fire that he knew that the cinders came through the window; that several of the panes of glass had been out a year and a half; that he took some slats of crates and nailed them against the window; that the officers of appellee knew the fact that cinders had come into the building through the slats. The witness Ruff, an employé of appellee, testified to the effect that he had observed cinders in the house within a month of the fire, and on several occasions for a month and as much as six months before the fire, and called Mr. Burrows' attention a time or two to the fact, and that no further protection was made against the cinders coming through the window. The evidence shows that the warehouse was a lawful and proper structure, and there was a lawful and reasonable use of the premises; and in the exercise of its legal rights in this respect the law does not impose upon appellee any duty to anticipate the negligence of the appellant. Freeman v. Nathan, 149 S. W. 248, and authorities there referred to support the proposition here, we think. 2

Thompson on Negligence, § 2314. As appellee in the lawful use of its own property was not under any legal duty to appellant to so construct or maintain in repair the building as to prevent its loss or injury from negligence of appellant, it is believed that contributory negligence could not properly be predicated on the failure of appellee to so slat or lattice the window as to exclude sparks from an engine. If appellee did not owe the appellant the legal duty to close the window and keep it securely closed against the result of possible or probable negligence of the appellant, then as a matter of law the appellee would not be concluded of a recovery for the negligence of appellant because of a failure, if any, to securely close or slat the window against negligent operation of a locomotive.

We have carefully considered the other assignments, and conclude that they should be overruled.

The judgment is affirmed.